Mackie Motors Company, Appellant, v. Dearborn Truck Company, Appellee.

**CONTRACTS: Construction—Condition Precedent.** A cause of action which, when judged from the standpoint of the *literal* terms of a written contract, is fully matured on the happening of a specified event, will not be held dependent on the happening of another and additional event which neither the contract nor the mutual and practical interpretation of the parties treats as a condition precedent.

**CONTRACTS: Consideration—Promise for Promise.** A written contract under which the seller of goods agrees to buy back from the buyer the goods sold, and the buyer agrees to sell back, is supported by sufficient consideration.

**CONTRACTS: Construction—Time as Essence of Contract.** A specified time for the doing of an act—i. e., making payment—will not be

deemed as of the essence of the contract, when not so denominated by the contract nor so treated by the parties in their mutual and practical interpretation of the contract.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

NOVEMBER 15, 1921.

ACTION at law upon a contract. At the close of the plaintiff's evidence, there was a directed verdict for the defendant, and the plaintiff appeals.—*Reversed and remanded.*

*Sargent, Gamble & Read,* for appellant.

No appearance for appellee.

EVANS, C. J.—I.  Under the facts pleaded, this action may be deemed either to be one for damages or for the specific performance of a promise to pay. The plaintiff, an Iowa corporation, engaged in selling automobiles, trucks, and truck attachments at Des Moines, Iowa, and the defendant, an Illinois corporation, engaged in the business of manufacturing and selling motor truck attachments at Chicago, on or about September 13, 1917, entered into the following written agreement:

1: CONTRACTS: construction: condition precedent.

"Agreement entered into this 13th day of September, 1917, between the Dearborn Truck Company, of Chicago, Ill., and the Mackie Motors Company, of Des Moines, Iowa, represented by Mr. B. H. Pierce.

"It is understood by this agreement that we are today entering an order for ten (10) two-ton units that are to be shipped as ordered. Credited in amount of $252.00 each, paid by the Mackie Motors Company on ten (10) one-ton units which are in a car on track in Des Moines.

"In the event that the ten (10) [two-ton] units are not ordered out by the Mackie Motors Company by September 22d, we agree to reimburse the Mackie Motors Company in amount of $252.00 each for any of the ten (10) one-ton units remaining in their possession at that time.

"Further, the Mackie Motors Company agree to store the remaining unsold units, without charge, for a reasonable time.

"It is also understood that the carload of units are to be taken up Saturday, September 15th, 1917."

The brackets and the insertion therein are ours, and are made as indicating the proper construction of the contract. It is this contract which plaintiff alleges in its petition was breached by the defendant. It appears without dispute in the evidence that, some time in July, 1917, the plaintiff ordered 14 one-ton units and 1 two-ton unit, together with housings therefor. The units referred to consisted of a rear axle, gearing, etc., to be attached to an ordinary automobile, thereby converting it into a truck. The one-ton units were delivered at Des Moines, Iowa, with draft for $3,657, the balance due defendant therefor, attached to the bill of lading. These units had not been removed from the car when the agreement above set out was entered into. The full purchase price of the 14 one-ton and the 1 two-ton units was $4,032, $375 of which was paid in advance of shipment. It will be noted that, though 15 units had been purchased by the plaintiff from the defendant, the agreement above set forth purported to deal with only 10 of them. The plaintiff agreed, in effect, to take up the bill of lading and to pay the draft attached thereto on September 15, 1917. It did not pay such draft on that date, but did pay the same on September 22d following. The reason for this delay will be referred to later.

The first important question presented for our consideration is to construe the contract. The order of the court below construed the contract as an agreement by the defendant to *credit* the price of the 10 one-ton units upon the price of an equal number of two-ton units, and nothing more. The plaintiff contends that, under the agreement, the plaintiff was not bound to order the two-ton units, although it had the privilege so to do; and that, in the event that the plaintiff did not order the two-ton units on or before September 22, 1917, then the defendant agreed to "reimburse" the plaintiff to the amount of $252 for each one-ton unit then remaining on hand unsold. If the construction adopted by the trial court be correct, then the failure of plaintiff's suit necessarily resulted. On the other hand, if the construction contended for by plaintiff be the correct one, then the direction of a verdict against the plaintiff was erroneous. Both parties agree that if, before September

22d, the plaintiff had "ordered out" one or more two-ton units it would have been the duty of the defendant to credit $252 upon the purchase price of each one. The pivotal question, however, is: If the two-ton units were not ordered by plaintiff on or before September 22d, was the defendant then bound to "reimburse" the plaintiff to the extent of $252 upon each one-ton unit remaining unsold? We think this question must be answered in the affirmative, for the following reasons:

(1)   Such is the literal provision of the agreement.

(2)   Such was the construction which both parties, in their subsequent communication and negotiations, put upon such agreement.

The specific defense put forward by defendant in this case appears in Paragraph 10 of its answer, as follows:

"The defendant denies that, in the event said one-ton units were not purchased by the plaintiff, then this defendant was to reimburse the plaintiff in the amount of $252 for each of the aforesaid ten (10) one-ton units; but this defendant alleges and states the fact to be that it agreed to credit the plaintiff with the purchase price of said one-ton units only in the event that said one-ton units were paid for *by September 15, 1917.*"

The witness Mead, who was a sales manager for the defendant company, and who represented the company in the execution of the contract sued on, testified as follows:

"He [Mr. Pierce] wanted us to take back the 14 one-ton units. The intent of that agreement was that Pierce gave us an order for 10 two-ton units, and on that order we agreed to credit the Mackie Company $252 for each of the 10 one-ton units, and we take back the one-ton units. All this was conditional upon their compliance with the contract, i. e., that they should pay for the one-ton units by taking up the draft, as stipulated in the agreement. The draft was then unpaid. *In the event that the Mackie Company had not ordered the two-ton units shipped by September 22d [1917], we agreed to pay them $252 for each of the one-ton units remaining unsold on September 22d.* In other words, we agreed to *reimburse* the Mackie Motors Company for the 10 one-ton units in the event that they were not sold by September 22d, and we would order them from Des Moines to other points. Provided they had taken up the draft by Septem-

ber 15th, we would buy back the 10 one-ton units and pay them $252 each, unless they had succeeded in selling them themselves. The Mackie Company did not take up the draft until September 22, 1917. The primary reason for entering into the contract referred to on September 13, 1917, was to get the draft taken up. *The reason the Dearborn Truck Company refused to repay to the Mackie Motors Company the amount of $252 each on the 10 one-ton units was because the Mackie Company did not take up the draft on September 15th,* as provided in the written contract under date of September 13th.''   ·

It will be noted that the one breach of the contract charged by this witness against the plaintiff is that the plaintiff did not take up the draft on September 15th. The important thing at this point is that this witness construes the contract precisely as contended for by the plaintiff. There is in evidence correspondence between the parties which adopts the same construction.

· The order of the trial court dismissing the petition is predicated upon a construction that is contradictory to the testimony of the witness Mead. It is also predicated upon the idea that, though the terms of the contract might call for such a construction, yet there was no *consideration* for a mere promise by the defendant to take back the one-ton units and to reimburse the plaintiff therefor.

2. CONTRACTS: consideration: promise for promise.

A mutual agreement to rescind a contract is not lacking in consideration. It is supported by the same consideration of mutual promise as was the original contract. A mutual agreement to rescind is as valid as a mutual agreement of purchase and sale. It is promise for promise. There is, therefore, no lack of consideration in any feature of the contract.

It will be noted from Mead's testimony that Pierce, representing the plaintiff, wanted the defendant to take back the one-ton units. The defendant agreed to take back *ten* of them. In legal effect, this was an agreement to *purchase* back ten of them if so many remained unsold on September 22d. Under the evidence of Mead, the agreement had in it something of the character of a compromise. Mead testified that he consented to it only as a matter of business policy. The agreement was no less valid on that account. But we need not deal with the ques-

tion of whether it was a compromise. It is enough that the defendant did agree to take back the one-ton units on September 22d, and to reimburse the plaintiff therefor on the condition specified.

Whether the contract might be construed as putting upon plaintiff an obligation to order out 10 two-ton trucks within some reasonable time after September 22d, is a question which we need not consider, if for no other reason than that the defendant has never complained of such failure nor predicated any breach or claim of damage thereon. What is clear, under the agreement, is that plaintiff was under no obligation to order out the two-ton units *before September 22d.*

II. We have no argument for appellee. We have to look, therefore, to the colloquies of court and counsel at the trial, as to the grounds upon which the order of dismissal was based. These were, in brief, as follows:

(1) That the plaintiff did not pay the draft on September 15th.

(2) That the plaintiff did not furnish storage for a reasonable time without charge, as provided in the agreement.

(3) That the plaintiff did not order the two-ton units.

Our foregoing discussion disposes of the third alleged breach. As to the second ground, the evidence does not disclose any breach. On the contrary, it appears that the plaintiff did store the goods with the Merchants Transfer Company, which, so far as it appears in this record, was its usual method of storing all goods in its custody. It did here store the same until March 16, 1918, and did, during that time at least, protect the defendant against charges for storage. The defendant ordered out one or more of these units, and ordered them shipped to other localities. They were promptly delivered by plaintiff free of charge, as agreed. On March 16, 1918, these goods were ordered out of the hands of the plaintiff by someone, and were shipped by the Chicago, Rock Island & Pacific Railway to the defendant's agency at Omaha. This act appears to have been a blunder upon the part of someone, and responsibility for it appears to be disclaimed by both parties. The trial court properly refused to permit the parties to go into an investigation of that question, as being immaterial upon the issues as

made. Assuming, for the sake of the argument, that the evidence was sufficient to go to the jury on the question of breach at this point, it was not of that character that would have justified the direction of a verdict thereon.

The question remains whether the plaintiff lost all the benefits of the agreement by its failure to pay· the purported draft on September 15th. We think this question must be answered in the negative. Time was not made of the essence of the contract. If it had been, the defendant did not purport to forfeit the contract. As to just what occurred pertaining to such draft, the evidence is meager and inferential. The .statement of counsel in argument is that the draft in contemplation of the contract never was presented to the plaintiff for payment until September 22d. The evidence does show that the original draft attached to the bill of lading had been presented on or about September 1st, and had been returned. So far as disclosed by the evidence, the draft next presented was drawn in Chicago under date of September 20th, and could not have been presented to the plaintiff before September 21st, and probably September 22d. The defendant accepted the proceeds of such draft, without any complaint of default or breach. This payment was made by the plaintiff in purported pursuance of the contract. It was in full accord with the requirements of the contract, except as to the element of time. The delay was a matter of a few days only. After the receipt of these proceeds, the defendant treated the contract as still in force, and continued its negotiations with plaintiff thereunder. On October 5, 1917, the defendant wired directions to the plaintiff, pursuant to the contract, to ship a one-ton unit to Minnesota, which directions the plaintiff promptly followed.

We reach the conclusion that, upon the record before us, it was error to direct a verdict for defendant. We have no occasion to pass upon the question whether it would have been error to direct a verdict for plaintiff. The judgment below is, accordingly, reversed.—*Reversed and remanded.*

STEVENS, ARTHUR, and FAVILLE, JJ., concur.

DE GRAFF, J., takes no part.